JAMES W. CONVERSE *et al.*

*v.*

JOHN B. BROWN.

*Opinion filed December 16, 1902.*

· 1. SPECIFIC PERFORMANCE—*evidence of verbal contract must be clear to justify specific enforcement.* To justify a decree of specific performance of a verbal contract relating to land, the contract must be certain and unambiguous and the proof clear and convincing.

2. LACHES—*when a delay of eleven years will bar relief.* Delay of eleven years to file a bill to enforce a verbal contract to permit complainant to redeem from a tax sale will bar relief, where complainant, during such time, treated the property as that of defendants, and claimed it only after it had greatly increased in value.

APPEAL from the Circuit Court of Cook county; the Hon. C. H. DONNELLY, Judge, presiding.

H. S. MECARTNEY, for appellants.

REMY & MANN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:.

This is a bill in chancery filed by the appellee in the circuit court of Cook county, against the appellants, on September 9, 1897, to redeem eighty-seven lots in Allen's and Frisbie's subdivisions in section 18, township 37, range 15, Cook county, Illinois, from a tax sale (which took place on September 25, 1884, and which ripened into a deed on August 24, 1887,) by virtue of a parol agreement alleged to have been made on September 25, 1886, between appellee and appellant Reed. The court entered a decree permitting the appellee to redeem, to reverse which decree an appeal has been perfected to this court.

It is averred, in substance, in the amended bill, that the appellee was the owner of the lots in question; that they had been sold to appellant Reed for taxes; that the period of redemption expired on September 25, 1886; that some time prior to that date there had been negotiations

between the appellee and Reed for the purchase of appellee's interest therein by Reed; that the sale of such interest not having been consummated, appellee, for the purpose of redeeming from the said tax sale, deposited a certified check for $1000 with the county clerk of Cook county in time to effect the redemption thereof; that Reed thereupon requested appellee to withdraw said redemption money and permit a tax deed to issue upon said sale, and in consideration thereof agreed that he would pay to appellee the price appellee had paid for said lots; that in case he did not purchase the interest of appellee therein, appellee should have the right to redeem from the said tax sale; that thereupon the certified check was withdrawn and a tax deed was subsequently made of said lots to appellant Converse, who had notice of appellee's rights; that had it not been for the representations of Reed the appellee would have redeemed from said tax sale; that he was ready to convey to appellants, or their grantees, his interest in said lots upon payment to him of the amount agreed to be paid him for his interest therein, and in default of such payment prayed that he be permitted to redeem from said tax sale.

It is first said that the agreement sought to be specifically enforced is vague and uncertain and not sufficiently established by proof, and that a court of equity should not decree its specific performance. The only proof of the agreement was the testimony of appellee, and his evidence was flatly contradicted by Reed, who denied that he ever met appellee in person or that he made the agreement set out in the bill and testified to by appellee, and a number of letters offered in evidence, written by Andrew Crawford, who represented the appellee, with reference to the redemption of said lots from said tax sale, indicate that the agreement between appellee and Reed with regard to a redemption from said tax sale was not the agreement testified to by appellee, but was to the effect that appellee was to have until De-

cember 1, 1886, in which to effect a redemption from said tax sale. Mr. Crawford wrote Reed on November 27, 1886, that "the 60 ds. I find has about run out," and on August 4, 1887, twenty days prior to the time when the tax deed was made, Reed wrote to Crawford: "My agreement to let the 1884 sale stand in *statu quo* till December 1, 1886, ran out last December, and I cannot continue to hold them at redemption," and tended to corroborate the version of the transaction as testified to by Reed.

Before a court of equity will decree the specific performance of a verbal contract in regard to lands it must be certain and unambiguous in its terms, and the proof thereof must be clear and convincing. (*Winter* v. *Trainor*, 151 Ill. 191; *Carson* v. *Davis*, 171 id. 497; *Godschalk* v. *Fulmer*, 176 id. 64; *Havana Press Drill Co.* v. *Ashurst*, 148 id. 115; *Woodard* v. *Woodard*, 178 id. 295.) We are of the opinion the evidence fails to establish the agreement the specific performance of which is sought to be enforced, in the clear and convincing manner which the law requires, and for that reason alone the court should have declined to decree a specific performance thereof.

It is also urged that the appellee is barred of the relief prayed for by reason of his *laches.* The agreement sought to be enforced is alleged to have been made on September 25, 1886, which was almost eleven years prior to the time of the filing of the bill for a specific performance thereof. The only reason alleged or shown for such delay was that Reed put the appellee off, from time to time, under one pretext or another, when he desired him to comply with his agreement. No claim is made that the appellee ever attempted to redeem from said tax sale by offering to pay to the appellants, or either of them, the amount required to redeem from said tax sale, or that appellee ever offered to convey to appellants, or either of them, his interest in said lots, and demanded that they, or either of them, pay him for his interest therein. On the contrary, subsequent to the time when

the right of appellee to redeem from said tax sale by force of the statute had expired, he seems to have entirely abandoned said lots and ceased to pay taxes or assessments thereon or to give them any attention, but treated them as the property of the appellants, and when his representative called upon the appellants it was with a view to induce them to pay to appellee about $5000, which it was claimed was due appellee as the purchase price of said lots. The lots, at the time it is claimed the agreement was made, were low and swampy and were of the value of not to exceed $30 each, while at the time the bill was filed they were of the value of $200 each. It would be inequitable for the appellee to lie by for eleven years and treat the property as the property of the appellants. and the appellants as his debtors, and then, after the property had become valuable, claim to own the same, and seek to redeem from a tax sale which had ripened into a title many years before, and after the interests of third parties had intervened. If the appellee had the right to redeem and desired to avail himself of such right he should have acted promptly, and not slept upon his rights for so great a length of time as he did, as shown by this record. In *Shovers* v. *Warrick*, 152 Ill. 355, on page 360 it is said: "After a long period has elapsed, courts of equity will be cautious in enforcing the specific performance of a contract when there is any real doubt about its existence and terms."

From an examination of this record we have reached the conclusion that the agreement relied upon by the appellee has not been proven; and even if it had, the appellee, by reason of his *laches*, is barred of the relief prayed for, and that the circuit court erred in decreeing that appellee had the right to redeem from said tax sale.

The decree of the circuit court will therefore be reversed and the cause remanded to that court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*